If it pleases the Court, my name is Sam Gorham and I have with me John Crone. We represent the City of Hickory in this matter. The issue is whether the District Court erred in denying a motion to dismiss the lack of subject matter jurisdiction based on waiver of governmental immunity. Mr. Gorham, while we're on the subject of subject matter jurisdiction, and this may be a question better posed to Mr. Davis, but I recall that you did not concede that diversity jurisdiction had been established in this case in your answer. And I'm wondering whether that was because the plaintiff in this case is a limited liability company, and under the rules as I understand it, it's not the state of organization that matters. This is a Delaware limited liability company, but the citizenship and residence of its members. And I'm wondering whether any of those members may be North Carolina citizens, in which case there is no diversity jurisdiction. Do you know the answer to that? I don't think there were North Carolinians. I don't think there were, but I'm not positive. I just have to say I don't know. Is there any reason why you didn't concede? No, I don't think that. That has not been an impediment in our proceeding in this case. Okay. Well, Mr. Davis, you might want to think about that, and if you have an answer, you can let us know when you get up here. I don't think that was the issue. When an alleged contract is at issue, governmental immunity borrows quasi-contractual claims against the municipality arising from the alleged contract, even if the contract concerns a proprietary function. And, of course, the standard of review in this case is no vote. There were no factual findings in the district court. The North Carolina courts clearly say that the starting place in resolving governmental immunity issues is to look to see what the legislature has said about the question. The legislature in North Carolina sets the public policy following the separation of powers clause in the North Carolina legislature, that is legislative, executive, and judicial branches under Article I, Section 6. The tort case of Stata Williams and the tort case of Steelman v. Newbern, which are not dispositive to our issues, but they do give some background point out that judicial, or rather governmental immunity, has been part of North Carolina law since 1889. Now, since then, the courts adopted it and the legislature passed some statutes based on the sovereign immunity. Now, sovereign immunity is the public policy in North Carolina, subject to exceptions. In Williams and Steelman cases, again, those are tort cases, recognize that further modification or repeal of the common law doctrine must come from the legislature. Again, the legislature. Courts should not abrogate doctrine that has been expressed by the legislature. Why does governmental immunity matter? Of course, incentives passed, as we all know, it protected the king who could do no wrong. Today, it protects the sanctity of municipalities and counties' budgets, which, under North Carolina law, must be balanced. Under North Carolina statute, municipalities may purchase liability insurance to insure against tort. I think we all understand it. On the contract side in North Carolina, a contract for capital projects or grant projects has to be valid, has to pass a pre-audit requirement set out in detail in the local government budget and fiscal patrol act, which was enacted by the North Carolina legislature for the protection of taxpayers. And this statute requires a budget ordinance that includes an appropriation authorizing the obligation. It also requires funds to pay the obligation and a written contract with an attached pre-audit certificate. Under data general, the failure to comply with the above voids the contract or agreement. So, data general hinges on that. Municipalities have no way to protect themselves from quasi-contract claims. Whereas, as to a contract, the pre-audit requirement and the statute that I just read, pre-audit requirements, offer protection from tort claims, capital projects, and grant projects. Anyone can read the local government budget and fiscal patrol act. Let me ask you this. Yes, sir. If the claim against the government is unjust enrichment, what protection do they need against that kind of claim? Well, Judge Borges was saying, I think, that we've got a tribal issue under unjust enrichment. But that's not my question. My question is, generally speaking, as a matter of policy and philosophy, if the charge against the municipality or the government is unjust enrichment, you've got something and a benefit of something to the detriment of a private party. What policy or what is it that the government is being protected from through the use of governmental immunity? Well, of course, the government is not going to be a party to a contract in that situation. That's right. That's a given. Let's say that's a given. And so, it gets back to the legislature, I think. Does the legislature want to carve out an exception there so that they're willing to sue a municipality for unjust enrichment? In these cases that we're talking about, there's a contract and no, there's not a contract. And data general in the MC series rebuild case say no contract. Then you don't get to the issue of unjust enrichment. And one of the problems is that if you've got a court, you can go by insurance. And if you've got a written contract or an agreement, you look at the statute that I just talked about, and that's available to anybody to look at. I found it on my cell phone last night in my motel room. But what is there to protect a municipality from unjust enrichment? Go engage in a proprietary function, I guess. Well, except that data general and MC series rebuild are distinguished. And granted, there are some cases that won't slip in and say, if the government engaged in a proprietary function, then you've exceeded the governmental immunity. But that's not what data general and MC series rebuild say. They don't go that far. They look at the contract, no contract, and then you don't get to the unjust enrichment. I'm just trying to figure out data general, what the basis for that opinion was. And I don't understand what the government is being protected from. Data general said that leasing a computer... I'm familiar with that. Yes, sir. But it said that without a valid contract, the trial court lacks personal jurisdiction with the claim for... Well, if you don't have a valid contract, then you don't get to a quantum merit and those other equitable claims. And so what Judge Borges, I think, was saying was, well, he found no contract at all. But then he said, we need to look to see whether it's proprietary or governmental in function. Well, the trouble... And you don't dispute that it's proprietary function? We admit that. Right. I mean, we're selling fuel at the airport. Okay. So what is there that your client needs protection from when it behaves like an ordinary business corporation, making money or trying to, and the claim is for unjust enrichment, as the Chief Judge just described it? What does your client need protection from? Well, if I understand you correctly, we need protection from a multitude... How do you protect your staff from unjust enrichment? I mean, they can... You can engage in governmental function. That's how you protect it. But the North Carolina law seems to say... I mean, it used to be governmental in function. Governmental in function definition was very broad, and it does seem to be going the other way. And you know the cases that say... We looked at it and said, well, selling fuel at the airport is probably proprietary. It's not governmental. Now, operating the runways, which have always been the city's responsibility, or running the ILS or something like that, might be governmental. But selling soda pop and jet fuel are not. But still though, we think that the legislature needs to step in, not the courts. And if there's going to be a wide open area, that's the amount of public policy that the courts don't need to get involved in. And data general and institute rebuild recognize that public policy. And then get into that. Now, a couple other points. Chief Judge Mitchell, in a case called Whitfield v. Gilchrist, said that the courts consider quasar contracts only in the absence of an express agreement between the parties. So you don't get to...  The agreement is between Hickory and Profile, which was the operator of the airport. It was not between the plaintiff in this case or the plaintiff's predecessor in interest. And Whitfield further said, and this is the North Carolina Supreme Court, a contract will not be implied in law, quote, where none exist in fact. Then you use that implication to support the further implication that the state has intentionally waived its sovereign immunity and consented to be sued for damages for the contract it never entered in fact. With that, we ask the court to consider that data general and institute rebuild control this case and that the court should dismiss plaintiff's claims on grounds that governmental immunity bars quasar contractual claims. And Mr. Crone may come back. Thank you. Thank you. Mr. Davis. Thank you, Your Honors. May it please the court, Ward Davis on behalf of AGI Associates, the appellee with me is Demetra Sorles, also from Bell, Davis & Pitt. Judge Diaz, I'll address your question first. Without going back and checking, I'm not 100% sure, but I'm quite confident that this was not an issue of one of the members of the LLC being a resident of North Carolina. I've run into that issue before. It's become my practice to check on that before filing a diversity action with an LLC involved. So I'm confident, not 100%, but confident that that's not an issue in this case. It might have been a good practice also to allege that in a complaint. Understood. Right. It turns out to be different, obviously, to allege it. Absolutely. Thank you, Your Honor. As Justice Martin pointed out in a concurrence in the recent Bynum opinion of the North Carolina Supreme Court, these are case-by-case analyses. Because governmental immunity tends to be so circumstance-specific, the court avoids applying categorical rules, and this is a perfect example of a case where that's appropriate. It's a unique case with unique facts. The city of Hickory ultimately stood in the shoes of the FBO that was operating the city of Hickory Airport. They have conceded that that was clearly a proprietary function. The city began collecting rents. The city began selling fuel. It has now been, for a period of time, in a clearly proprietary function. How about, I think we understand the facts. I don't agree with what you said, but Data General, how would you have us go? That's exactly where I was going, Your Honor. We have Data General, M-Series, and Gilchrist that are sort of a line of cases that cite one another. The way I would distinguish those three cases is, one, the way Judge Voorhees did in the district court, is that each of those cases was a contract analysis. Granted, Data General has a proprietary function issue, and I'll address that in a moment. But Gilchrist, it was an issue of attorney's fees for a public nuisance suit. There is no analysis in Gilchrist about proprietary function. The same is true with M-Series. With Data General, Data General does go into a very short, quick, at the end of the opinion, it just makes a statement, that by undertaking these activities, without really defining what that means, Data General, or excuse me, the municipality was in a proprietary function. What is so distinguishable about Data General from this case, is Data General still only involved one lease. And what the court seemed to be saying was that by entering one lease, that's a proprietary function. But the courts, the facts of that case and the analysis are still limited to one lease. It was not a case, as we have here, where it is clearly a long, ongoing proprietary function. It's not limited to just one contract. That's mighty thin ice. It may be the best you can do, but, you know, we still have this decision where they, in effect, allowed governmental immunity to be asserted against equitable remedies in a proprietary situation. Granted, it's a court of appeals and not the North Carolina Supreme Court, but it's hard to get around. Understood, Your Honor. And we've known that reality since we read Data General. I would encourage the court, and it had a significant effect on the district court's opinion, but if we look at the more recent 2012 case of Williams, the Estate of Williams case, Judge Voorhees quoted the case, the Williams court quotes the Grimesland case, and Your Honors have seen the quotes, but these are the quotes in the 2012 cases. It's one of the most recent Supreme Court decisions on governmental immunity, is that government immunity covers only the acts of a municipality, and the Williams court even added emphasis on the word only. They took the quote, put it in italics, and bolded it. Governmental immunity covers only the acts of a municipality or municipal corporation committed pursuant to its government functions, and then goes on to cite the Grimesland case, which is an older case, but it's now here cited in a 2012 case, and saying that when a municipal corporation undertakes functions beyond its government and police powers and engages in business in order to render a public service for the benefit of the community for a profit, and here's the key, it becomes subject to liability for contract and tort as in case of private corporations. And Your Honor asks the question, why does a municipality need protection against unjust enrichment? And this case is a great example of why they shouldn't get protection against unjust enrichment when they're engaging in an ongoing proprietary function, because here they're collecting rents just as Profile was doing before. Clearly Profile is a private FBO. It's running the airport. It's collecting rents. Bankruptcy is filed. City of Hickory decides to step in and run the airport instead of bringing in a different FBO. They start collecting rents and don't distribute them. What is the remedy? But in data general, weren't they leasing? They were leasing computer equipment. Leasing it after the contract expired or something like that. They were leasing computer equipment. And the court would let them get an equitable remedy, wouldn't let them bring in an equitable remedy. Correct, Your Honor. One of the other distinguishing characteristics of data general and M-Series and the Gilchrist case, and each of those courts spent a good bit of time talking about this, is the plaintiff had failed to satisfy those statutory requirements for entering a contract with a municipality and seemed to find some fault with the plaintiff for doing that. In the Gilchrist case it talked about the fact that this lawyer had made a big deal about filing over 100 public nuisance claims.  you know how you're going to recover your attorney's fees. You should have done it the correct way. In this case, we don't have that. There's no allegation and there's just no fact. It's not the case that someone failed to follow a statutory procedure to enter a contract. You never had the opportunity to do that. Never had the opportunity. And I don't think that statute applies, Your Honor. Why don't you have a claim for conversion? We've talked about and thought about that, and that's a good question. As we were evaluating what claims to file, I'm just not sure a conversion fit, because the city is collecting rents pursuant to a bankruptcy order. So to claim that they're collecting those rents... Unlawfully. Unlawfully, exactly. I mean, we could have tried to bootstrap it into the fact that you've collected them but then you're supposed to pay them over, but the bankruptcy order, and this is one reason Judge Voorhees dismissed our accounting claim, the bankruptcy order just said you've got to account for them. What about the Viking Utilities Court case in March of this year in the Court of Appeals? Have you looked at that? I have not looked at that, Your Honor. I don't believe. I think it's entirely consistent with your approach to Williams as you just described it. I'm glad to hear that. That's good to hear. That's right. That's right. So thank you for pointing that out, Your Honor. But just in conclusion, again, and I don't want to keep repeating myself, but here we have a municipality who is collecting funds and is keeping those funds. There are other lawsuits out there with similar claims. When Judge Whitley ultimately dismissed the bankruptcy, he kind of acknowledged in court, I know I'm creating a problem but I don't have any other options. And so you have the city, you have multiple parties who were creditors in the bankruptcy coming and saying, wait a minute, now that you're collecting these funds and Profile is not, we're entitled to them. And we're running into a government immunity defense where it is fundamentally clear that this city has stepped into a proprietary function, and we would argue that Data General and Gilchrist and M-Series are distinguishable because of the statutory requirement issue and because what I believe what the Gilchrist Court and what M-Series and Data General Courts are concerned about most is when you're under a contract theory. And so you can take any of those plaintiffs. They've alleged the contract that they failed to satisfy statutory requirements. That contract claim fails, and they're able to just in run around the statutory requirements and file an unjust enrichment claim. And with that not being the case here, we would ask the court to find that under these facts, in this unique case, that Data General doesn't apply and that it's the reasoning of the Williams case and the Grimesland case that says that when a municipality undertakes one of these proprietary functions, they ought to expect to be sued. It's just part of the reality. You know, in a situation like this where this case could come up under another state, we could certify the question to the highest court as to what the law is in North Carolina. But North Carolina's the only state in our circuit that doesn't permit us to certify a question to them when we have a question of state law. It's unfortunate, and I wish it were different. It is unfortunate because it's such a nice, tight, narrow issue that it would be interesting to see how they would rule. They don't want to let us. You don't have to take our guess. That's right. Thank you, Your Honor. Thank you. Mr. Crone? Good morning, Your Honor. I'm John Crone. It's my privilege to be here representing the city of Hickory in my capacity as city attorney and my honor to be arguing for you today. Judge Davis mentioned the Viking case, and I don't have time in my five minutes to delve into it as extensively as I'd like to, but I would like to point out that, interestingly, the Viking case did not cite or mention Data General or the M-Series rebuild case. And we feel like the Data General case controls in this particular case before the court. Also, Viking... Is it from the Supreme Court or the Court of Appeals? Vikings is a... Court of Appeals. Court of Appeals case, Your Honor. Published. And it recently that we stumbled across on our way down here almost. I admire your honesty. Viking is a breach of contract case. It has some quasi-contract claims thrown in, but the facts and the allegations are dissimilar from the case at bar, and I would contend, among other things, that the Data General case is the controlling case that we should be looking at and analyzing the pleadings in this case. And in particular, and my partner has gone over this, but you've got, in contract cases, if you go through the pre-audit process, as the legislature says, you waive your governmental immunity, and there's a good reason to do that. And the reason for that and for allowing insurance to be purchased in tort cases is we're looking at taxpayers here who don't want surprises. Taxpayers don't want contracts to be entered into by a municipality without being approved by some mechanism to where the public knows their money is safe.  AGI never had the opportunity to negotiate a contract. The situation was hoisted on them by the purposes. I just don't know that Data General is a good fit. That's a very good point. I'd like to answer that, Your Honor, in that Profile was the original party to the contract. AGI came along later, and AGI's function in this is to assume or take over an indebtedness that Profile had with the lender. So AGI has never dealt with the city. The Data General case says specifically, and I think this is important to discuss, is that parties dealing with governmental organizations are presumed to know the limitations of authority of the governmental agency and that public policy mandates that governmental immunity bar quasi-contract claims such as unjust enrichment. That would be our argument. So AGI... But that's not really responsive to Judge Diaz's question. Well, I think it goes to AGI's position as far as it never dealt with the city of Hickory. Profile is the entity that dealt with the city. Right. That doesn't help you, I don't think. Because in Data General, there are expectations up front. These parties, the city, the entity there was negotiating with a governmental entity. They should have known what the requirements were, and they were penalized for not knowing that. But we don't have that in this case. Well, I do think the facts are dissimilar. I think in our case at Barr, our dealings were profiled as a concession agreement. Of course, we never dealt with the lending agency. AGI was a stranger to that negotiation. They were a stranger to that negotiation. Why should they be forced to burden as if they were face-to-face negotiators with the city? I'm having difficulty understanding. Well, we would still contend that profile, when they initially contracted with the city of Hickory, that contract went through the vetting process. Your point is that all third parties dealing with profile, lenders, secured parties, unsecured parties, all those potential parties are essentially burdened with profiles, failures or deficiencies. Yeah, but I don't think under the data general case, I don't think we get that far. I mean, the issue here is... Well, the data general didn't deal with that situation. That's exactly right. But data general has to do with a contract between two parties up front. The party that it was dealing with that brought the claim. Which is not this case. That's correct. We'd also like to point the court's attention again to the Whitfield case that says a contract will not be implied in law where none exist in fact, and then use the implication to support the further implication that the state has intentionally waived the sovereign immunity and consented to be sued for damages. Again, the issue here is whether sovereign immunity should apply to quasi-contracts, unjust enrichment type claims. You've got it clearly ruled by the legislature for express contracts, written contracts. You have the city's ability to purchase insurance for torts, and this comes somewhere in the middle. And the public policy rationale and reasoning behind data general was to, again, among other things, protect taxpayers from the uncertainty of what could happen in a quasi-contract or a contract that goes wrong, which is exactly what happened in this contract. Okay, Mr. Brown, you're out of time. Thank you, Your Honor. I was enjoying your argument, but we've got others. I thought I had a minute and 36 left. Really?  It's okay. Thank you, Your Honor.
judges: William B. Traxler, Jr., Albert Diaz, Andre M. Davis